IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DOMINIQUE JACQUEZ SANDERS                                                    PLAINTIFF

    v.                             Civil No. 2:21-cv-02207-PKH-MEF

KILOLO KIJAKAZI, Acting Commissioner,
Social Security Administration                                               DEFENDANT


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Dominique Jacquez Sanders, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (the "Commissioner") denying his claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

### I.    Procedural Background

Plaintiff filed his application for benefits on February 16, 2019, alleging disability beginning December 23, 2013, due to right hip issues, neuropathy spasms, back pain, difficulty walking and standing, difficulty sitting, and sleep disturbance. (ECF No. 14, pp. 154-155). Plaintiff was 53 years old on the date last insured, has an education as a Registered Nurse, and is unable to perform any past relevant work. (*Id*., p. 30). His application was denied initially and on reconsideration. (*Id*., pp. 19, 101-103, 105-107). At Plaintiff's request, an Administrative Law Judge ("ALJ"), Harold D. Davis, held an administrative hearing on September 17, 2020, via

1

telephone due to the extraordinary circumstance presented by the COVID-19 pandemic. (*Id.*, pp. 19, 39-72). Plaintiff was present and represented by counsel.

On November 4, 2020, the ALJ concluded that Plaintiff's post-operative internal derangement of the right hip, degenerative disc disease of the lumbar spine with bulge at L4-5 and L5-S1, chronic lower back pain syndrome with radiculopathy into the right leg, degenerative joint disease in the right hip, complex regional pain syndrome, obesity, asthma, and depression were severe, but he concluded these impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (ECF No. 14, p. 22). He found Plaintiff capable of performing:

> light work as defined in 20 C.F.R. § 404.1567(a) with the exception that he is limited to simple tasks, simple instructions, and only incidental contact with the public. In addition, the claimant should perform work in a controlled environment with no exposure to dust, fumes, smoke, or temperature extremes. (*Id.*, p. 23).

With the assistance of a vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work as a small products assembler, DOT 706.684-022/light/svp 2, of which there are 319,000 jobs in the national economy; a merchandise marker, DOT 209.587-034/light/svp 2, of which there are 129,000 jobs in the national economy; and a routing clerk, DOT 222.687-022/light/svp 2, of which there are 105,000 jobs in the national economy. (ECF No. 14, p. 31). Plaintiff was found not to be under a disability from his alleged onset date through the date of the ALJ's decision. (*Id.*).

The Appeals Council denied Plaintiff's request for review on October 22, 2021. (ECF No. 14, pp. 5-10). Plaintiff then filed his Complaint to initiate this action on December 21, 2021. (ECF No. 3). This matter is before the undersigned for report and recommendation. Both parties have filed appeal briefs (ECF Nos. 17, 19), and the case is ready for decision.

## II. Relevant Evidence

The undersigned has conducted a thorough review of the entire record in this case. Because Plaintiff's appeal primarily concerns whether his chronic pain issues prevent him from a limited range of light work, the undersigned will only recount the evidence relevant to that claim.

The 1,086-page record in this case includes objective medical evidence and treatment notes, opinion evidence, and Plaintiff's subjective statements to the Agency regarding his limitations. The relevant medical evidence demonstrates Plaintiff's issues stem from an injury he sustained to his right hip and leg when he slipped on a patch of ice in 2013. (ECF No. 14, pp. 345-378). Radiology records from the December 2013 injury showed normal pelvis and hips. (*Id.*, p. 368).

Plaintiff was off work until January 2014, when he sought emergency treatment for increased hip pain radiating to the right proximal back after increased activity. (ECF No. 14, p. 282). He reported sitting for nine hours on his first day back to work and suffered from pain in his right hip, groin, and low back. He could transfer between a wheelchair and bed without difficulty during the appointment. (*Id.*, p. 287). It was noted that Plaintiff was tearful due to pain rated at 10/10 and that his regular medication of Skelaxin and Ultram provided no relief. (*Id.*, p. 301). He was given morphine and Phenergan as visible spasms were seen in the lower back and pelvic area. (*Id.*). Plaintiff was ultimately discharged home with Skelaxin and prednisone after spasms stopped and Plaintiff reported feeling better. (*Id.*, p. 302).

In March 2014, Plaintiff returned to the emergency department for muscle spasms despite having had surgery to repair the torn labrum he sustained in his inciting injury. (ECF No. 14, pp. 268-321). However, the record shows that he left without being seen after lying on the floor in the lobby relieved his pain. He stated that he preferred to return home to take his medications rather

than wait to be seen. He was delivered to his vehicle via wheelchair. (*Id*.). Plaintiff was later hospitalized in May due to back pain and urinary incontinence. (*Id*., p. 322). A lumbar MRI showed minimal disc bulge at L4-L5 and a tiny annular tear at L5-S1. Plaintiff was discharged with pain medications and encouraged to take less non-steroidal anti-inflammatories. (*Id*., p. 323).

Plaintiff continued treatment for back issues in 2015. Examination by Donnelle Wagner, ANP, revealed a normal range of motion but a guarded left hip. (ECF No. 14, p. 593). Plaintiff's pain medications were refilled, and he was referred to orthopedics and pain management based on his complaints of pain. Plaintiff was also examined by Thomas Cheyne, M.D., who found a slightly awkward gait and 20% limitations of head and neck range of motion. (*Id*., p. 590). The MRI revealed lumbar radiculopathy, and Plaintiff was assessed with chronic sciatica. It was determined that Plaintiff did not require referral to a surgeon for his back. (*Id*., p. 584). The treatment plan included heat therapy, pain medication, and limitation to light activity. (*Id*.).

After one lumbar epidural steroid injection, Plaintiff reported 30% improvement of symptoms. (ECF No. 14, p. 579). Plaintiff was referred for two additional injections, and, in the meantime, he would continue pain medications, heat therapy, and light activity only. (*Id*., pp. 576, 579). Plaintiff returned for care approximately six months later in 2016. (ECF No. 14, p. 561). Dr. Cheyne reiterated that Plaintiff should remain at light activity, continue heat therapy, and pursue his additional steroid injections. Examinations in August showed an antalgic gait, decreased range of motion, and tenderness. Plaintiff received two injections for pain relief in August. (*Id*., p. 554, 559).

Plaintiff sought treatment throughout 2017 primarily for chest pain and cardiovascular issues. (ECF No. 14, pp. 379, 516, 518, 525, 856). He reported to treatment providers that he worked on his own farm and lifted heavy bags of chicken feed. (*Id*., p. 541). Plaintiff declined to

4

continue with steroid injections as he felt they only worsened his symptoms. (*Id*., p. 513). In May 2017, Plaintiff presented for treatment for worsening back pain. (*Id*.).

Plaintiff returned for treatment for back pain in 2018. (ECF No. 14, p. 499). Dr. Cheyne noted that Plaintiff's last visit was at least two years ago for sciatica. Plaintiff's recent MRI was described as "completely normal." (*Id*.). He exhibited positive straight leg raise tests, decreased sensation, and apparent weakness in the legs while balancing on toes or heels. Dr. Cheyne noted that the degree of symptoms could not be explained by the MRI results and advised Plaintiff to see neurology for additional testing. (*Id*.).

A neurologist, William Knubley, M.D., found no clear evidence of neurogenic changes in Plaintiff despite his reports of numbness, weakness, and pain. (ECF No. 14, p. 490). However, Plaintiff demonstrated an antalgic gait. Dr. Knubley assessed Plaintiff for post-traumatic neuropathic pain syndrome but noted that he may just have a contusion of nerve and a stretch injury. (*Id*., p. 495). Plaintiff continued treatment for back pain throughout 2018, receiving pain medications, attending aquatic therapy, and undergoing EMG/NCV studies that ultimately revealed very mild findings of sensory motor neuropathy. (*Id.*, pp. 479, 481, 486).

Plaintiff established care with Danny Silver, M.D., to manage chronic pain in January 2019. (ECF No. 14, p. 1038). On examination, Plaintiff demonstrated restricted mobility and pain with flexion, extension, and lateral movements, with tenderness to bilateral lower paraspinal areas. He had a positive straight leg raise test on the right and exhibited tenderness to palpation of the right groin and hip with rotation. Plaintiff was given Ultram and ibuprofen. (*Id*.). During follow-up appointments, Plaintiff consistently reported that his pain and symptoms were managed to a functional level with his treatment regimen. (*Id*., pp. 1016, 1021, 1026).

Plaintiff sought emergency room treatment for an ankle injury after he fell off a stepstool trying to hang a picture on the wall. (ECF No. 14, p. 792). At a follow-up appointment following the injury, treatment providers noted that Plaintiff did not wear the 3D boot given to him but preferred his own cowboy boots. Plaintiff was subsequently given an ankle support that he could wear with his boots. (*Id*., p. 791).

By 2020, Plaintiff reported that his goals for treatment were being met and that he continued to care for his farm animals. (ECF No. 14, p. 1076). He continued to demonstrate pain with right side rotation of the hip, weakness in the right leg, tenderness to palpation of the right lower thoracic and lumbar areas, and restricted mobility and pain with flexion and extension. However, he reported to his treatment provider that his pain was managed to a functional level with his treatment program.

### III.   Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). If there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions

from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § 404.1520(a)(4). The fact finder only considers a plaintiff's age, education, and work experience in the light of his residual functional capacity if the final stage of the analysis is reached. 20 C.F.R. § 404.1520(a)(4)(v).

## IV. Discussion

Plaintiff raises two issues on appeal: (1) whether the ALJ properly evaluated Plaintiff's alleged subjective symptoms, and (2) whether substantial evidence supports the ALJ's RFC finding. After thoroughly reviewing the record, the undersigned finds that the ALJ properly

evaluated Plaintiff's subjective complaints and substantial evidence supports the ALJ's RFC finding.

      **A.**    **The ALJ properly evaluated Plaintiff's subjective complaints.**

Plaintiff asserts that the ALJ failed to properly analyze Plaintiff's subjective complaints. (ECF No. 19, p. 13). Part of the RFC determination includes consideration of a claimant's subjective statements regarding the intensity, persistence, and limiting effects of the alleged impairments. An ALJ may discount subjective complaints of physical and mental health problems that are inconsistent with medical reports, daily activities, and other such evidence. *Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997). Using the *Polaski* factors, "[s]ubjective complaints may be discounted if there are inconsistencies in the evidence as a whole." *Casey v. Astrue*, 503 F.3d 687, 695 (8th Cir. 2007); *see also Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (noting *Polaski* factors must be considered before discounting subjective complaints).

In addition to the claimant's prior work record, the *Polaski* factors include: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5), functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); *see also* 20 C.F.R. § 404.1529. While an ALJ must consider these matters and give good reasons for discrediting a claimant's subjective complaints, he need not explicitly discuss each of these factors in depth. *See Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008); *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 1997). When an ALJ states that he discharged his official duties as stated in his decision, we presume he has done so. *See, e.g., Willburn v. Astrue*, 626 F.3d 999, 1003-04 (8th Cir. 2010) (applying the presumption of regularity to conclude the ALJ discharged his official duties as described).

Here, the ALJ considered Plaintiff's lengthy medical history dating back to the originating injury in 2013, effectiveness of conservative treatment, and relatively active daily activities. The record contains several years of treatment related to Plaintiff's internal derangement of the right hip sustained when he slipped on a patch of ice. While he underwent a right hip arthroscopy in 2014, Plaintiff's ongoing issues with pain were treated conservatively. The ALJ noted imaging records with generally mild findings and no need for additional surgeries. The record indicates that Plaintiff's medical treatment was primarily focused on cardiological issues, rather than hip pain, for some time. Plaintiff also participated in physical therapy and pain management, demonstrating more mobility, and reporting some alleviation of pain symptoms with these treatment measures.

The ALJ noted some inconsistencies with the level of limitations alleged by Plaintiff when the longitudinal record demonstrated a relatively independent and active lifestyle. The record contains several references to his activities on his farm, including lifting heavy bags of feed and working with livestock, namely cattle, pigs, and chickens. He told treatment providers that he worked on his own farm, owned a furniture store, and attempted to do tasks around the house like hanging pictures using a stepstool. Plaintiff reported the ability to drive, shop in stores, prepare simple meals, do some dishes, and sit in a computer chair for an hour. He could also handle personal finances and serve as payee for his disabled brother. The ALJ considered that Plaintiff continued to exhibit a moderate limp, tenderness to his back and hip, and a positive straight leg test on the right; however, given Plaintiff's reports to treatment providers that medication resulted in fairly good pain control and that his symptoms had improved since his injury, the ALJ concluded that limitation to light work with additional restrictions would account for Plaintiff's pain.

Plaintiff's treatment record and statements to the agency certainly reveal some level of pain stemming from his old hip injury. However, Plaintiff's ability to work on his farm, complete personal care, shop in stores, drive, and do some household tasks belie the level of limitation alleged. Additionally, Plaintiff's longitudinal treatment for chronic pain indicates improvement of symptoms with medication management. As such, the ALJ properly considered Plaintiff's subjective statements when setting out a light RFC with additional mental and environmental limitations.

**B.  Substantial evidence supports the RFC finding.**

Plaintiff also contends that the ALJ's RFC determination is not supported by substantial evidence. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545. A disability claimant has the burden of establishing his RFC. *Vossen*, 612 F. 3d at 1016. "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Miller*, 784 F.3d at 479 (8th Cir. 2015) (citing *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001)). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

The evidence before the Court supports the ALJ's RFC determination. A review of the record reveals no additional surgical intervention, generally mild objective findings, and effective

10

control of symptoms with conservative treatment. Examining and non-examining consulting physicians reviewed the record and assessed Plaintiff capable of light work. His own statements to treatment providers and the Agency throughout the relevant period indicate that, while he certainly experienced pain, he was generally able to function independently in his activities of daily living.

In his decision, the ALJ noted examination findings showing tenderness to low back, positive straight leg raises, decreased sensation in the right lower leg, apparent weakness in legs, and an antalgic gait. The ALJ also considered imaging studies showing normal to mild findings, including mild degenerative change and small central disc bulge at L4-5 and L5-S1, and impressions of chronic sciatica and chronic pain. The ALJ noted that Plaintiff left the emergency department before he was seen when lying on the floor relieved his pain. Plaintiff also delayed receiving pain injections when he was too busy, eventually declining to continue with a third dose. However, the ALJ considered more recent evidence in the record showing that Plaintiff was pleased with the pain management medication regimen as it had significantly improved his pain and daily functioning.

The ALJ also considered the opinions of examining and non-examining physicians finding Plaintiff capable of light work based on their review of the record evidence. The ALJ noted that the state agency consultants provided specific reasons to support their assessments, which were consistent with their review of the record, as well as the ALJ's independent review of the record. The ALJ also noted that examining consultant, Michael Westbrook, M.D., provided an assessment that was consistent with his own exam findings. The ALJ, thus, found these opinions persuasive.

As to Plaintiff's reported functionality, the ALJ noted Plaintiff's repeated references to working on his farm, including lifting heavy feed bags and working with cattle. The ALJ

considered Plaintiff's reports that he could independently complete his personal care, do some household tasks, prepare his own simple meals, drive, shop in stores, shop on the computer, read as a hobby, handle personal finances, and act as payee for his disabled brother's care. The ALJ acknowledged that Plaintiff experienced some pain and medication side effects, but he accounted for those limitations by limiting Plaintiff to light work with additional mental and environmental restrictions. Thus, the record contains substantial support for the ALJ's RFC finding in this case.

Accordingly, the undersigned finds that the ALJ's decision to deny benefits in this case is supported by substantial evidence.

## V. Conclusion

Based on the foregoing, it is recommended that the Commissioner's decision to deny benefits be affirmed and that Plaintiff's Complaint be dismissed with prejudice.

**The parties have fourteen (14) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 31st day of January 2023.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE